IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Robert Willison,                        :

              Plaintiff,                :   Case No. 2:15-cv-2704

    v.                                  :   JUDGE MICHAEL H. WATSON
                                            Magistrate Judge Kemp
Dr. Michael Davis,                      :

              Defendant.                :


                    REPORT AND RECOMMENDATION

     Plaintiff Robert Willison, a state prisoner currently an
inmate at the Grafton Correctional Institution ("GCI"), filed
this lawsuit pursuant to 42 U.S.C. §1983 alleging that his
constitutional rights were violated by the defendant, Dr. Michael
Davis.  This matter is now before the Court on Dr. Davis' motion
for summary judgment (Doc. 15).  For the following reasons, it is
recommended that the motion be granted.

            I.  PROCEDURAL BACKGROUND

     Mr. Willison moved for leave to proceed in forma pauperis
and submitted a verified complaint on August 11, 2015 (Doc. 1).
The only named defendant is Dr. Michael Davis, the Religious
Services Administrator for the Ohio Department of Rehabilitation
and Correction ("ODRC"), in his official and individual
capacities.  Dr. Davis filed his answer on September 29, 2015
(Doc. 6).  On December 4, 2015, Mr. Willison filed a motion for
partial summary judgment on his First Amendment claim only (Doc.
8).  In response, Dr. Davis filed a motion pursuant to
Fed.R.Civ.P. 56(d) asking the Court to delay ruling on Mr.
Willison's motion until he was able to conduct sufficient
discovery to enable him to respond.  (Doc. 9).  The Court granted
Dr. Davis' request to delay the ruling (Doc. 13), and on June 20,

2016 Dr. Davis filed his motion for summary judgment and response
to Mr. Willison's motion (Doc. 15).  Mr. Willison failed to
respond to Dr. Davis' motion in a timely manner, so the Court
denied his motion for partial summary judgment without prejudice
and ordered Mr. Willison to respond to Dr. Davis' motion (Doc.
16).  Mr. Willison has now responded (Doc. 17) and Dr. Davis has
filed his reply (Doc. 19).  The summary judgment motion is ripe
for decision.

## II.  FACTUAL BACKGROUND

The following factual background is derived from the
pleadings, the motions for summary judgment and related briefs
filed by the parties, and their exhibits.  Mr. Willison, an
inmate at GCI, submitted a Request to Change Religious
Affiliation to Ronald Smith, the prison Chaplain, on or about May
21, 2015, requesting to change his religious affiliation from
Christian to Natsarim (which he uses interchageably with
Messianic Judaism).  At the same time he submitted two additional
requests for religious accommodations: (1) to be excused from
work on the Sabbath (Friday Sundown to Saturday sundown) and to
be permitted to have a Sabbath Bag; and (2) to be provided with a
kosher diet.  Complaint at ¶¶4-5.  Approximately 30 days later,
having not received a response from the accommodation requests,
Mr. Willison went to the GCI Chapel and met with prison Chaplain
Smith, with whom he discussed his requests.  The Chaplain
indicated that he would submit his recommendation to the ODRC
Operation Support Center.  Mr. Willison was granted the Sabbath
work proscription accommodation on June 26, 2015, but his request
for a kosher meal was denied.  Id. at ¶13; Exhibits A-B.  Dr.
Davis did not interview or consult with Mr. Willison before
issuing his final decision denying kosher meals.  Id. at ¶17;
Doc. 15-1 at ¶¶12-14.  Mr. Willison asserts that by being denied
a kosher diet, he would be precluded from observing the Passover

-2-

Seder and the Feast of Unleavened Bread ("Feast"), which are major tenets of Natsarim.  Id. at ¶19.

Dr. Davis avers that he denied Mr. Willison's initial request for a kosher meal based on the recommendation of Chaplain Smith, who included the following statement in his recommendation:

> I spoke with Mr. Willison, and he stated that he was
> 'searching' in regard to his personal faith.  When
> asked if he knew what a kosher diet was, he stated,
> 'not fully, but somewhat.'  He also stated that he had
> learned "Natsarim" Judaism from a man that [sic] was
> once in his unit and that he hadn't received all the
> information on his new faith preference, that it was
> coming through the mail.  He mentioned, 'It's all new
> to me.'  When asked if he still wished for a more
> restrictive diet he stated, 'I'd rather do it all at
> once.'  I do not recommend a kosher diet at this time,
> and refer this request through the proper channels to
> Dr. Mike Davis, Religious Services Administrator.

Doc. 6, Exhibit A; Doc. 15-2 (Affidavit of Dr. Davis) at ¶8.  Dr. Davis states that as a matter of policy he does not individually interview inmates who submit requests for kosher meal accommodation, as that is the duty for prison chaplains or other religious officials at each institution.  The reason for this is because he would not have time to conduct separate interviews with each inmate, and the individuals working within the institutions are able to personally observe the inmates' behavior and participation in faith practices.  Id. at ¶12-14.

Mr. Willison states that in the spring of 2016 he submitted an inmate kite request to Chaplain Smith requesting that he be provided kosher meals for the upcoming Passover and Feast.  He claims that both Chaplain Smith and the Warden denied the request, but does not provide an ODRC form reflecting the denial.  Doc. 17 (Declaration of Mr. Willison) at ¶¶6-7.  The kosher meal accommodation was approved by Dr. Davis on April 7, 2016, based on the recommendation of Rabbi Bauer, a Messianic Jewish

-3-

volunteer serving offenders at GCI. Davis Aff. at 9.  Dr. Davis
has supplied a copy of an ODRC form dated April 7, 2016, which is
duly addressed to Mr. Willison at GCI.  Mr. Willison claims that
he only learned of the approval for kosher meals when he received
Dr. Davis' motion for summary judgment in early July 2016.  Doc.
17 at ¶5.  Mr. Willison states that due to "the Defendant's
deception," he was "denied/prevented from receiving kosher meals
for Passover/Unleavened Bread sceduled [sic] for around the 23rd
of April 2016)."  Id. at ¶¶8, 11.  He asserts that he needs to
perform additional discovery so that he can show that GCI and/or
Dr. Davis failed to properly notify him of his approval.  Id. at
¶13.  He provides a declaration of a fellow inmate and member of
the Nasari faith, Henry Sunderman, in support of this narrative.
Doc. 17 at 6.  Mr. Sunderman states that in early July, 2016, Mr.
Willison approached him and showed him the kosher meal approval
found in Dr. Davis' motion for summary judgment.  Id. at ¶7.  Mr.
Sunderman further states that GCI did not have Mr. Willison
approved for kosher meals at that time, so he advised him to show
the approval letter to the Food Services Manager.  According to
Mr. Sunderman, Mr. Willison started receiving kosher meals on or
about late June or early July 2016.  Id. at ¶¶8-9.

    Chaplain Smith provides an affidavit which states that the
Passover holiday and the Feast were celebrated from April 3-11,
2015, although some followers of Natsarim celebrate the Feast one
week after Passover.  The 2015 Passover and Feast had already
occurred before Mr. Willison had changed his religious
affiliation.  According to Chaplain Smith, the 2016 Passover and
Feast were celebrated from April 22, 2016 through April 30, 2016.
Id. at ¶12.  He explains that GCI allows followers of Natsarim
who do not have a kosher meal accommodation are allowed to attend
the Passover Seder and to eat matzo.  The matzo for those without
a kosher meal accommodation is typically donated by a Jewish

-4-

organization or purchased by GCI religious services.  Id. at
¶¶10-14.  Mr. Willison claims to have been denied kosher meals
for the Passover and Feast, and that he was "forced to consume...
leavening foods" which violated the tenets of his faith.  Doc. 17
at ¶¶8-9.

Mr. Willison raises the following claim, repeated here
verbatim:

> Defendant Mr. Michael Davis violated plaintiff's rights
> under the First and Fourteenth Amendments to the United
> States Constitution, and RLUIPA when he discriminated
> against plaintiff by denying him the religious
> accommodation for kosher meals and was also an Equal
> Protection violation - 42 U.S.C. § 2000, et seq.

Complaint at 5.  Mr. Willison claims that Dr. Davis knew, or
should have known, that by denying him kosher meals he was
violating his rights under the First and Fourteenth Amendments to
the Constitution and the Religious Land Use Institutionalized
Persons Act ("RLUIPA").  In support of his allegations he cites a
number of lawsuits filed by other inmates at GCI in which Jewish
inmates were successful in obtaining kosher meals to accommodate
their religion.  Id. at ¶¶14-16, 18, 22.  Mr. Willison seeks a
declaratory judgment stating that Dr. Davis' actions and
inactions violated his constitutional and statutory rights by
substantially burdening the practice of his religion, not being
the least restrictive means of furthering any compelling
government interest.  He also seeks for Dr. Davis to approve his
request for a kosher diet and award compensatory damages for the
violation of his rights and for causing emotional pain and
suffering. Id. at 8-9.

### III.  LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is not a substitute for a trial when
facts material to the Court's ultimate resolution of the case
are in dispute.  It may be rendered only when appropriate
evidentiary materials, as described in Fed. R. Civ. P. 56(c),

demonstrate the absence of a material factual dispute and the moving party is entitled to judgment as a matter of law. <u>Poller v. Columbia Broadcasting Systems, Inc.</u>, 368 U.S. 464 (1962).  The moving party bears the burden of demonstrating that no material facts are in dispute, and the evidence submitted must be viewed in the light most favorable to the nonmoving party.  <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144 (1970).  Additionally, the Court must draw all reasonable inferences from that evidence in favor of the nonmoving party.  <u>United States v. Diebold, Inc.</u>, 369 U.S. 654 (1962). The nonmoving party does have the burden, however, after completion of sufficient discovery, to submit evidence in support of any material element of a claim or defense on which that party would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact.  See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986).  Of course, since "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact," <u>Celotex</u>, 477 U.S. at 323, the responding party is only required to respond to those issues clearly identified by the moving party as being subject to the motion.  It is with these standards in mind that Dr. Davis' motion for summary judgment must be decided.

IV.  <u>RLUIPA</u>

Section 3 of RLUIPA ("the Act") provides in pertinent part: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the burden furthers "a compelling governmental interest," and does so by "the least restrictive means." 42 U.S.C. §

-6-

2000cc-1(a)(1)-(2).  The Act defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." §2000cc-5(7)(A). The threshold inquiry, however, is "whether the challenged governmental action substantially burdens the exercise of religion." Baranowski v. Hart, 486 F.3d 112, 124 (5th Cir. 2007); see also Barhite v. Caruso, 377 F.App'x. 508, 511 (6 th Cir. 2010). The Act does not provide a cause of action against defendants in their individual capacities.  Colvin v. Caruso, 605 F.3d 282, 288 (6th Cir. 2010).  The Act permits "appropriate relief against a government," but the Sixth Circuit has held that such relief does not extend to monetary damages.  Cardinal v. Matrish, 564 F.3d 794, 801 (6th Cir. 2009); see also Nelson v. Jackson, 2014 WL 197877 (S.D. Ohio Jan. 15, 2014).

      In the Cardinal case, the plaintiff inmate sued under the Act because the prison failed to provide him with kosher food, but he was later transferred to a facility that provided him with kosher meals.  The court held that because the inmate had received the relief in the form of kosher meals and was not entitled to monetary damages, his RLUIPA claim was moot. Cardinal, supra, 564 F.3d at 798-99.  Mr. Willison alleges that Dr. Davis substantially burdened his ability to practice his religion by failing to approve his request for kosher meals. However, as is undisputed by the parties, he has now been approved for kosher meals.  Thus, because monetary damages are not available under RLUIPA, his claim under that statute is now moot pursuant to the holding in Cardinal.

                    V.  CONSTITUTIONAL CLAIMS

      To establish a prima facie claim under §1983, a plaintiff must satisfy two elements: (1) that defendants acted under color of state law, and (2) that defendants deprived plaintiff of a federal statutory or constitutional right.  See,

e.g., Flagg Bros. v. Brooks, 436 U.S. 149, 155 (1978); Searcy v.
City of Dayton, 38 F.3d 282, 286 (6th Cir. 1994); United of Omaha
Life Ins. Co. v. Solomon, 960 F.2d 31, 33 (6th Cir. 1992) (per
curiam).  Conclusory allegations are insufficient to state a
claim under §1983.  Rhodes v. Chapman, 452 U.S. 337 (1981).  Mr.
Williford claims that Dr. Davis' actions violated his First and
Fourteenth Amendment Constitutional rights to freedom exercise of
religion and equal protection of the law.

A.  First Amendment

In order to demonstrate a violation of the right to
religious freedom in the prison setting, a plaintiff must prove
the following.  First, the plaintiff must show that the religion
in question is, in fact, a religion.  If it is a non-traditional
religion, the inmate must show that it "occupies a place in the
lives of its members 'parallel to that filled by the orthodox
belief in God' in religions more widely accepted in the United
States." Dettmer v. Landon, 799 F.2d 929, 931 (4th Cir. 1986),
cert. denied, 107 S.Ct. 3234 (1987).  Several sub-issues are
involved in making that determination, including whether the
doctrines of the religion relate to a spiritual aspect of life,
whether the religion adheres to belief in a supreme being,
whether it has ceremonial worship practices, and whether it has
been practiced or recognized for a significant period of time.
Id.  The plaintiff must also demonstrate a sincere belief in the
tenets of the questioned religion.

If a plaintiff can demonstrate a sincere belief in a
recognized or legitimate religion, his right to practice that
religion should be accommodated unless it interferes in some
fashion with the need for internal order and discipline which is
essential to the prison setting.  Under the Religious Freedom
Restoration Act of 1993 ("RFRA"), which became effective on
November 16, 1993, see 42 U.S.C. §§2000bb et seq., burdens placed
on the free exercise of religion were permissible only if they
furthered a compelling governmental interest and if they were the

-8-

least restrictive means of furthering that interest.  However,
the Supreme Court later concluded that the RFRA exceeded
Congress' powers to legislate pursuant to §5 of the Fourteenth
Amendment.  <u>City of Boerne v. Flores</u>, 521 U.S. 507 (1997).

Thus, the proper test to be applied  to whether an
institutional denial of the right to engage in certain religious
practices or ceremonies is an appropriate restriction on an
inmate's First Amendment rights takes these factors into account:
whether the restriction is logically related to a legitimate
interest in security, whether the inmate is provided with
alternative means of exercising his right to pursue the religion
in question, the impact of any accommodations of the practice on
other inmates, prison personnel, or the allocation of prison
resources, and the existence of ready alternatives to the
challenged regulation or prohibition.  <u>O'Lone v. Estate of
Shabazz</u>, 482 U.S. 342 (1987); <u>Turner v. Safley</u>, 482 U.S. 78
(1987).

In this case, it is undisputed that Natsarim is a legitimate
religion.  Mr. Willison's allegations are based on kosher meal
accommodation and the opportunity to participate in Passover and
the Feast.  At the time he initially requested kosher meals, Mr.
Willison discussed his new faith with Chaplain Smith.  Chaplain
Smith concluded from the discussion that Mr. Willison was still
researching his new faith, based on in part on his comment that
he did not yet fully understand the kosher diet.  Mr. Willison
also indicated that he had not received all the information on
his new faith preference, that it was coming through the mail.
When asked by Chaplain Smith if he still wished for a more
restrictive diet at that time he stated, "I'd rather do it all at
once."  Mr. Willison does not deny making these statements.
Chaplain Smith was obligated to consider Mr. Willison's
statements and make an informed decision as to whether kosher
meal accommodation was appropriate at that time.  <u>See</u>, <u>Berryman
v. Granholm</u>, 343 Fed. App'x 1 (6th Cir. 2009) <u>citing</u> <u>Russell v.</u>

Wilkinson, 79 Fed.App'x 175, 177 (6th Cir. 2003) ("Prison officials have a legitimate penological interest not only in controlling the cost of the kosher meal program and ensuring that only those with sincere beliefs participate in the program, but also in maintaining discipline within the prison.").  Dr. Davis, following ODRC policy, relied on the recommendation of Chaplain Smith, and denied the initial request.  Viewing the facts in the light most favorable to Mr. Willison, even if it were determined that he was fully committed to his new faith and Chaplain Smith should have granted the initial request, Dr. Davis is the only named defendant in this case.  Dr. Davis, relying on the recommendation of a religious official within GCI in accordance with ODRC policy, granted Mr. Willison's kosher meal accommodation when it was requested again in the spring of 2016.

Mr. Willison's other grievance is based on his allegation that he was prevented from participating in Passover or the Feast. It is undisputed that he had not yet changed his religious affiliation at the time of the 2015 Passover and Feast. Dr. Davis had approved kosher meals prior to the 2016 Passover and Feast. Moreover, according to Chaplain Smith, inmates are not prevented from participating in these events if they are not approved for kosher meals.  Mr. Willison alleges in his declaration that he was prevented from doing so due to the "Defendant's deception." Presuming that Mr. Willison was precluded from participating in the Passover and Feast due to not being on a kosher diet, any constitutional deprivation would not be attributable to Dr. Davis.  There is no evidence in the record to indicate that Dr. Davis had anything to do with the purported delay in Mr. Willison's notification of the approval of his meal accommodation.  To the extent that Mr. Willison claims that he was "forced" to eat leavened food during Passover, this is also unsupported by the record.  Mr. Willison does not specifically

allege that he requested to participate in the 2016 Feast or to partake in matzo and was denied.  Even if he had done so, however, this would have nothing to do with Dr. Davis.  For these reasons, Dr. Davis is entitled to judgment as a matter of law on Mr. Willison's First Amendment claim.

B.  Fourteenth Amendment

Mr. Willison also argues that Dr. Davis' actions constituted a violation of his Fourteenth Amendment right to equal protection of the law.  "Fundamentally, the [Equal Protection] Clause protects against invidious discrimination among similarly-situated individuals or implicating fundamental rights.  The threshold element of an equal protection claim is disparate treatment; once disparate treatment is shown, the equal protection analysis to be applied is determined by the classification used by government decision-makers."  Scarborough v. Morgan County Bd. of Educ., 470 F.3d 250,259 (6th Cir. 2006).  "Prisoners are not considered a suspect class for the purposes of equal protection litigation."  Jackson v. Jamorg, 411 F.3d 615, 619 (6th Cir. 2005).  In order for the actions of prison officials to rise to the level of a violation of the Equal Protection Clause, a prisoner must show that he or she was treated differently than similarly situated prisoners and that there was no rational basis for the difference in treatment. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

The basis for Mr. Willison's Equal Protection claim seems to be his belief that, because other inmates housed at Grafton have received a kosher diet in settlement of claims similar to the one he raises, he should be entitled to the same treatment.  Although his first request for kosher meals was not approved, his request for work proscription on the Sabbath was approved.  Given the very recent change in Mr. Willison's religion and his interview with Chaplain Smith at the time of his initial request, the Court

does not deem Chaplain Smith's recommendation to be unreasonable.
It is essential that prison officials be given broad discretion
in the day-to-day operation of prisons.  Thornburgh v. Abbott,
490 U.S. 401, 413 (1989).  Moreover, Mr. Willison has not
demonstrated any discriminatory intent on the part of Dr. Davis,
and it is undisputed that he was ultimately provided with kosher
meals when it was determined that it was appropriate to do so.
Dr. Davis followed ODRC protocol by following the recommendation
of GCI religious officials, and Mr. Willison cannot show that he
was treated any differently by Dr. Davis than similarly situated
inmates.  Dr. Davis is entitled to judgment as a matter of law on
the Equal Protection claim.

## VI.  CONCLUSION

For the foregoing reasons, it is recommended that Dr. Davis'
motion for summary judgment (Doc. 15) be granted.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation that
party may, within fourteen days of the date of this Report, file
and serve on all parties written objections to those specific
proposed findings or recommendations to which objection is made,
together with supporting authority for the objection(s).  A judge
of this Court shall make a de novo determination of those
portions of the report or specified proposed findings or
recommendations to which objection is made.  Upon proper
objections, a judge of this Court may accept, reject, or modify,
in whole or in part, the findings or recommendations made herein,
may receive further evidence or may recommit this matter to the
magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object
to the Report and Recommendation will result in a waiver of the
right to have the district judge review the Report and
Recommendation de novo, and also operates as a waiver of the

right to appeal the decision of the District Court adopting the
Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140
(1985); United States v. Walters, 638 F.2d 947 (6th Cir.1981).


                              /s/ Terence P. Kemp
                              United States Magistrate Judge